**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH KISH, et al. | ) | CASE NO. 5:00CV2047 |
| | ) | |
| Plaintiff, | ) | JUDGE GALLAS |
| | ) | |
| v. | ) | **PLAINTIFFS' BRIEF IN** |
| | ) | **OPPOSITION TO DEFENDNATS'** |
| CITY OF AKRON, et al. | ) | **SUMMARY JUDGMENT MOTION** |
| | ) | |
| Defendant. | ) | |

 

Plaintiffs, Elizabeth Kish and Victoria Elder, hereby submit their Brief in Opposition to Defendants Summary Judgment Motion.  As more fully set forth in the attached Brief in Support, and accompanying exhibits, Defendants' Motion should be denied as there exists a genuine issue of material fact for each of Plaintiffs' claims.

Respectfully submitted,

/s/ Jennifer A. Corso
David R. Knowles (0017693)
Anthony N. Palombo (0064384)
Christopher A. Holecek (0040840)
Jennifer A. Corso (0063667)
WEGMAN, HESSLER & VANDERBURG
6055 Rockside Woods Blvd., Suite 200
Cleveland, Ohio  44131
(216) 642-3342  Fax:  (216) 520-0145
drknowles@wegmanlaw.com
anpalombo@wegmanlaw.com
caholecek@wegmanlaw.com
jacorso@wegmanlaw.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.      STATEMENT OF THE CASE                                                    1

II.     STATEMENT OF THE FACTS                                                   2

III.    LAW AND ARGUMENT                                                         3

        A.      Plaintiff's Claims under the Fair Labor Standards Act            3

        B.      Plaintiffs' Retaliation Claims                                   6

                1.  Retaliatory actions against Plaintiff Elizabeth Kish         7

                2.  Retaliatory actions against Plaintiff Victoria Elder         9

                3.  Causal connection exists between Plaintiff's protected       11
                    activity and the adverse employment actions.

        C.      Plaintiff's Claim for Destruction of Public Records              12

        D.      Plaintiff's Claim for Spoliation of Evidence                     15

VI.     CONCLUSION                                                               18

<u>**BRIEF IN SUPPORT**</u>

**I.**     <u>**STATEMENT OF THE CASE**</u>

Plaintiffs have filed suit against the City of Akron and individual Defendant George Jumbert for violation of the overtime compensation provisions of the Fair Labor Standards Act (FLSA), engaging in retaliatory action against Plaintiffs for complaining about such violations, violation of Ohio's public records law through the destruction of public records relating to Plaintiffs' FLSA complaint, and spoliation of evidence in relation to Plaintiffs' FLSA complaint.

Plaintiffs filed suit on August 10, 2000. With the consent of all parties, this case was referred to mediation. Efforts at mediation, however, were fruitless. Trial is currently scheduled for November 13, 2001.

**II.**     <u>**STATEMENT OF THE FACTS**</u>

Plaintiffs Elizabeth Kish and Victoria Elder worked together in the Planning and Permits Division of the Department of Public Services, City of Akron. Ms. Elder was hired into the Division on March 5, 1995, in the classification of Data Entry Clerk. Ms. Kish transferred into the Division on June 10, 1996, holding the classification of Secretary II. Both positions are considered non-exempt under the Fair Labor Standards Act. At all relevant times, Defendant George Jumbert was the Manager of the Plans and Permits Division.

In 1996, within a few months after Ms. Kish's transfer into the Division, Ms. Kish requested an explanation from Defendant Jumbert regarding overtime hours worked not appearing on her paycheck. (Kish Tr. p. 25.) Defendant Jumbert informed Ms. Kish that in his Division, overtime hours were compensated for through the accrual of compensatory time, which was earned hour for hour. (Kish Tr. p. 26.) Defendant Jumbert informed her that if the procedure was changed for one employee (Ms. Kish) he would cut out all compensatory time and

flex time for all employees. (Kish Tr. p. 27.) As Ms. Kish was intimidated by being forced to address a personal pay issue with her entire Division, she did not pursue the matter further at that time.[1] (Kish Tr. p. 27.) Around this time period, Ms. Elder also complained to Mr. Jumbert about the overtime compensation procedures. Ms. Elder's complaints were met with the same response. (Elder Tr. p. 22-23.)

In November of 1998, Ms. Kish again addressed the issue of overtime with Defendant Jumbert. Defendant Jumbert again refused to change division procedures so that Division employees received compensation for overtime hours worked. (Kish Tr. p. 50.)

As a result of Ms. Kish's and Ms. Elder's complaints, which were ongoing and continued through the first half of 1999, the Civil Service Personnel Association (CSPA) became involved and Mr. Jumbert's practices were brought to the attention of other City officials, including the Department of Labor Relations. (Exhibit A.) In or around August, 1999, Mr. Jumbert discontinued allowing his employees to work overtime hours, thereby eliminating the irregular overtime compensation practices that had previously taken place. Neither Ms. Kish nor Ms. Elder ever received the back compensation that was due and owing to them to date.

Following Plaintiffs' complaints to Defendant Jumbert, Plaintiffs were subject to retaliation by Defendant Jumbert, including Defendant Jumber's failure to remedy harassment of Ms. Kish by fellow co-workers, Defendant Jumbert's continued assignment of duties to Ms. Elder above and beyond those within her classification, Defendant Jumbert's denial of time off to Ms. Kish for union meetings and meetings with the City's employee assistance program, and

---

[1] Another Division employee, Chrissi Stevens, also testified that she felt entitled to time and one-half for overtime hours worked, but feared that Defendant Jumbert would take the Division's flex time away if the employees demanded time and one-half compensation. (Stevens Tr. p. 29-33.)

denial of a leave of absence to Ms. Elder which resulted in Ms. Elder's forced resignation from her position in February, 2000.[2]

In April, 2000, Plaintiffs sought out their personnel records from the Division. In early April, Ms. Elder first informed the Division that she and Ms. Kish would be seeking their records. (Elder Tr. p. 63.) Approximately one week later, on April 12, 2000, Ms. Elder went to the Division in person and requested such records from Ms. Stevens. (Elder Tr. p. 63.) Ms. Stevens informed her that her records were in the Personnel Department. (Stevens tr. p. 41.) When Ms. Elder requested these records from the Personnel Department, she was told that they were at the Division. Ms. Elder returned to the Division, and again requested these records from Ms. Stevens. Ms. Stevens then told Ms. Elder that she had thrown the records away. (Stevens Tr. p. 41.)

Plaintiffs subsequently made written requests for "any and all records" pertaining to their work hours, pay, leave and leave hours earned during their employment with the Division. (Exhibits B and C.) Plaintiffs were informed by letter dated April 27, 2000, from the City's Department of Law, that the records sought "were thrown away". (Exhibit D.)

## III.  LAW AND ARGUMENT

### A.  Plaintiff's Claims under the Fair Labor Standards Act

Defendants claim that Plaintiffs "worked" only 37.5 hours per week, and that as such, Plaintiffs are not entitled to overtime compensation for the first two and one-half hours worked beyond their regular schedule. Plaintiffs' assert that their hours constitute forty (40) work hours per week as defined by the Fair Labor Standards Act (FLSA), and are entitled to overtime compensation for all hours worked beyond their regularly scheduled hours. There exists a genuine issue of material fact as to which hours of Plaintiffs' work schedule constitutes "hours

---

[2]  See Section IIIB, below.

worked" under the FLSA, and as such, summary judgment is not appropriate and should be denied.

Akron City Ordinance No. 852-1996 states that the "standard hours of work" for all CSPA members is to be "eight hours per day and forty hour in any one week." (Exhibit E.) Further, the CSPA contract states, "Any employee who works overtime continuous with his regularly scheduled eight (8) hours shall be compensated for such overtime hours worked at the applicable rate." (Exhibit F.) Clearly, the City has intended for Plaintiffs to be considered as "working" for eight hours per day. Further, it is uncontroverted that Plaintiffs were scheduled for eight and one-half hours per day, given a one hour lunch, yet paid for a standard forty hour work week.[3]

The FLSA specifically allows for employers to agree to count time that would otherwise be outside of "hours worked" as "hours worked" for the purpose of calculating overtime eligibility. 29 CFR 778.320(a) provides,

> Where the parties have reasonably agreed to include as hours worked time devoted to activities of the type described above [preliminary and postliminary activities and time spent in eating meals between working hours], payments for such hours will not have the mathematical effect of increasing or decreasing the regular rate of an employee if the hours are compensated at the same rate as other working hours.

Evidence shows that the City, through Ordinance 852-1996, has agreed to consider the CSPA employees, including Plaintiffs, as "working" for eight hours per day, forty hours per week, despite their actual scheduled hours of eight and one-half hours which includes a full hour of lunch and break time. The Division's practice of allowing its employees to take an hour for lunch (in lieu of a half hour lunch and two separate fifteen minute breaks), while paying its

---

[3] An example of a standard work schedule for the Division is 8:00 a.m. to 4:30 p.m., an eight and one-half hour time period.

employees for "working" an eight hour day is further evidence of this agreement.  The City can not now rescind that agreement simply because it does not meet the facts of this case.

In addition, it was standard practice for City employees to be scheduled for an eight and one-half hour work day, which would include a one-half hour lunch and two fifteen minute breaks.  (Sroka Affidavit, Exhibit O.)  However, Defendant Jumbert established his own Divisional rule in which he required his employees, including Plaintiffs, to take their allotted fifteen minute break periods adjacent to their lunch period.

Pursuant to the FLSA, break periods are calculated as "hours worked" when such breaks are less than twenty minutes in length.  (See, 29 CFR 785.18.)  If Defendant Jumbert had adhered to standard City practice, Plaintiffs would have received a half-hour lunch and two separate fifteen minute breaks throughout the remainder of the day.  As the separate break time would have been counted as "hours worked" under the FLSA, this would have amounted to an eight hour work day, and forty hour work week.

Defendants are attempting to use Defendant Jumbert's departure from City practice against Plaintiffs.  If Plaintiffs were allowed to take their break time as intended, and pursuant to City policy, there would be no question that they were considered 40 hour employees.  However, Plaintiffs were not allowed to take their break time pursuant to established City policy, solely due to the dictate of Defendant Jumbert.  Defendants' exclusion of the two fifteen minute breaks in calculating Plaintiffs "hours worked" serves only to further punish Plaintiffs for Defendant Jumbert's improper actions.

Regardless of what hours constitute those "worked" by Plaintiffs, Defendants have offered no evidence to show that Plaintiffs, by any measure, are not owed back payment for FLSA violations.  In fact, Defendants admit in their brief that Plaintiffs did, in fact, work over

forty hours per week. And Defendants admit that Plaintiffs were compensated only on an hour-for-hour basis, not time and one-half as required by the FLSA. Such admissions should soundly defeat any attempt at summary judgment on Plaintiffs' FLSA claim.

Defendants claim that such overtime "rarely" occurred is meaningless and should be ignored. Defendants offer as "proof" for this assertion Plaintiffs' compensatory time logs for 1999, which show little compensatory time earned. However, Defendants blatantly ignore that the reason prior time logs are not shown as "proof" is because Defendants illegally destroyed such records in violation of Ohio's public records laws.[4] (See argument, below.) Likewise Defendants' claim that Plaintiffs' claims should be dismissed because they can not prove their overtime hours worked is without merit, as the only reason for the lack of such documentation is Defendants' illegal destruction of Plaintiffs' compensatory time records.

As there are genuine issues of material fact regarding Plaintiffs' hours worked, and the application of those hours to the Fair Labor Standards Act, summary judgment is not proper and must be denied.

**B.  Plaintiffs' Retaliation Claims**

Defendants spuriously assert that Plaintiffs' have no evidence of retaliatory action by Defendants. This claim is simply groundless and without merit. Plaintiffs have set forth numerous facts to establish a prima facie case of retaliation which can not be defeated through Defendants mere denials.

The FLSA prohibits retaliation against an employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act…". 29 U.S.C. §215(a)(3). A prima facie case for retaliation is established upon a showing

_____

[4] This is also rebutted by Ms. Elder, who testified that the compensatory hours earned in 1999 were significantly less than in prior years. (Elder Tr. p. 30.)

that (1) the employee engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action. *See, e.g., Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.), *cert. denied*, 498 U.S. 984 (1990).

There is no question that Plaintiffs engaged in protected activity by complaining to Defendant Jumbert that they were not being paid overtime at the required time and one-half. Defendants do not even attempt to negate this element of the prima facie case. Defendants, however, claim either that no adverse action existed, or that such action was not causally linked to the Plaintiffs' protected activity. Taken in the light most favorable to Plaintiffs, there is substantial evidence of retaliation and Plaintiffs' have established a causal connection to their protected activity. Each Plaintiff's facts will be discussed in turn, below.

   *1. Retaliatory actions against Plaintiff Elizabeth Kish*

From February, 1999 through September, 1999 Ms. Kish was harassed by co-workers who were upset about her complaints regarding the overtime compensation system. (Kish Tr. p. 11-12.) Ms. Kish reported this harassment on several occasions to her supervisor, Mr. John Elsey, and Mr. Jumbert, but no action was taken by management to stop the harassment.

In July, 1999, Ms. Kish was denied time off to consult with CSPA officials. (Kish Tr. p. 54-55. Exhibit G.) City policy had historically allowed for employees to take time to consult with union officials. Also in July, 1999, Ms. Kish was forced to take personal time (sick time) to meet with the City's employee assistance program (EAP). (Kish Tr. p. 54-55, Exhibit H.) Again, City policy had historically allowed employees to have such meetings without the loss of personal time. Further, Ms. Kish had never been required to take personal time for these meetings prior to the grievance hearings on the compensatory time.

Also in July, 1999, Defendant Jumbert rescinded two previously approved leaves for Ms. Kish which involved the use of compensatory time. At the same time period, Defendant Jumbert approved similar requests for other Division employees. (Exhibit I.)

Clearly, each of these incidents was closely related in time to Ms. Kish's complaints regarding the compensatory time procedure. Defendant Jumbert was personally responsible for these actions, and his decisions were contrary to clearly established City policy that had previously been consistently followed and inconsistent with his treatment of other Division employees.

Ms. Kish transferred from the Plans and Permits Division in November, 1999 in order to avoid further retaliatory action. (Kish Tr. p. 10.) However, throughout the process of the instant lawsuit, despite her transfer, Ms. Kish has been subject to ongoing retaliatory harassment. In January, 2001, despite a release from her physician, the City unreasonably refused to return her to work following a non-work related accident. (Exhibit J.) More recently, in May, 2001, as this case was proceeding to mediation, Ms. Kish attended a computer training class through work. The class ended at approximately 4:15 p.m. Although all other attendees (Ms. Kish's co-workers) were allowed to go home after the class, Ms. Kish was ordered to return to work. Ms. Kish's shift ended at 4:30 p.m.

The City's retaliatory actions against Ms. Kish have been ongoing in nature, and closely related in time to her complaints about the Division's compensatory time procedure or during her involvement in the instant lawsuit. As there are genuine issues of material fact surrounding Ms. Kish's retaliation claims, Defendants' summary judgment motion as to this claim must be denied.

## 2. Retaliatory actions against Plaintiff Victoria Elder

Ms. Elder was also subject to ongoing acts of retaliation. Ms. Elder made ongoing complaints to Defendant Jumbert regarding the compensatory time system beginning in 1996 or 1997, and ongoing throughout her employment. (Elder Tr. p. 22, 25-26.) Defendant Jumbert assigned Ms. Elder to perform the duties of a higher job classification without additional compensation. In 1998, Ms. Elder complained about this job assignment, and even took the civil service examination in an effort to be promoted, but was not among the top three scorers on the test. Despite the fact that there were eligible employees within the City that could hold this position, Defendant Jumbert failed to hire anyone off the eligible list, and instead required Ms. Elder to continue working out of classification without additional compensation. (Elder Tr. p. 19-21.) Defendant Jumbert deliberately assigned Ms. Elder to do work of a higher classification without appropriate compensation in retaliation for her complaints about the Division's compensatory time practices.

On November 1, 1999, upon Ms. Kish's transfer from the Division, Ms. Elder was assigned all of Ms. Kish's former duties. (Elder Tr. p. 39-40.) Other employees more qualified than Ms. Kish and with experience in performing these duties were not assigned Ms. Kish's duties. (Elder Tr. p. 50, 53.) This action occurred approximately three months after the grievance hearings regarding the compensatory time practices. Ms. Elder complained to Defendant Jumbert about the unequal assignment of duties, but was not given any relief. In fact, Ms. Elder was disciplined for her complaints to Defendant Jumbert. (Elder Tr. p. 54.)

The most serious retaliation against Ms. Elder occurred in January, 2000. Ms. Elder had suddenly lost her sole child care provider, and had to secure alternate child care. Faced with waiting lists of eight to twelve weeks before her child could be accepted into child care

programs, Ms. Elder requested a personal leave of absence for three months. (Elder Tr. p. 40-41, 44, Exhibit K.) Ms. Elder's request for personal leave was denied by Defendant Jumbert. (Exhibit L.) Defendant Jumbert's purported reason for denying the request is that he could not be without an employee in Ms. Elder's position for that length of time due to the work load and strain on the department. (Jumbert Tr. p. 88-89.) Ms. Elder even attempted to explain to Defendant Jumbert that she could return to work sooner than it would take to hire and train a new employee. (Exhibit M.)

In February, 2000, Ms. Elder found a child care program with a shorter waiting list, and modified her request to four weeks of personal leave. (Exhibit N.) (Ms. Elder had continued working through this time due to temporary child care arrangements.) Ms. Elder's request for personal leave was again denied by Defendant Jumbert, again for the alleged reason that he needed an employee in that position. (Jumbert Tr. p. 103.) Ms. Elder was forced to resign from her position due to the denial of her request for personal leave.

Although Defendant Jumbert claims that he denied Ms. Elder's leave requests because he could not be without an employee in Ms. Elder's position, his deposition testimony fully contradicts this reasoning. Ms. Elder's final request was for approximately four weeks leave. Defendant Jumbert testified that the shortest amount of time it has taken him to hire in a new employee was thirty days (Jumbert Tr. p. 35-36), but that sometimes requests for new hires were denied or delayed due to budget constraints, and new hires have taken up to six months. (Jumbert Tr. p. 35-36.)

Jumbert further testified that it could take up to one year to fully train a new employee in Ms. Elder's duties. (Jumbert Tr. p. 107.) Although Defendant Jumbert conceded that he could have requested a temporary transfer of another City employee and received such in a two to three

days, he made no such effort to do so. (Jumbert Tr. p. 92, 94, 100.) In fact, Ms. Elder's replacement was not hired until June, 2000, approximately three months after Ms. Elder would have returned from her requested leave. (Stevens Tr. p. 52.)

As Defendant Jumbert's testimony establishes that Ms. Elder could have returned to work prior to the hire and training of her replacement, a reasonable jury could find that Defendant Jumbert's proffered excuse for refusing Ms. Elder's leave was merely pretext for retaliatory action against Ms. Elder. As such, there remains a genuine issue of material fact as to Ms. Elder's retaliation claims, and Defendants' motion must be denied.

*3. Causal connection exists between Plaintiffs' protected activity and the adverse employment actions.*

To establish the element of causal connection a plaintiff is required only to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). In addition, the causal connection element requires "merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated.". *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985), cert. denied, 474 U.S. 981 (1985).

Ms. Kish was subject to retaliatory harassment from her co-workers on an ongoing basis directly during the time period that she sought to gain proper overtime compensation. Further, Ms. Kish's requests for leave for union and/or EAP meetings were denied within the same month as the grievance hearing. These timelines unquestionably fall within the parameters of causal connection as set forth by the courts.

While Ms. Kish's more recent complaints - the City's failure to return her to work following her injury, and the most recent issue surrounding her work schedule and computer

training class - fall over a year after the July, 1999 grievance hearing, they have occurred during the process of litigation of this case. There is certainly a genuine issue of material fact as to whether these adverse actions are related to and in retaliation for Ms. Kish's protected activity.

The adverse actions against Ms. Elder were also related in time to her ongoing complaints about the compensatory time system. Ms. Elder's initial complaint about the time system was followed by her assignment to duties outside her classification, and Defendant Jumbert's continued refusal to appoint an employee to those duties despite the existence of a current eligible list. Ms. Elder was again assigned to additional duties, those of Ms. Kish, within a few months of the July, 1999 grievance hearing on the compensatory time issue. The retaliatory action was ongoing, culminating in the unreasonable denial of Ms. Kish's request for leave in January, 2000, and her modified request in February, 2001.

While Defendants argue that the denial of Ms. Elder's leave in January and February, 2000 is too far removed in time from the July, 1999 grievance hearing, they fail to acknowledge the ongoing, continuing nature of retaliatory acts against Ms. Elder. The "continuing violation" doctrine provides that when "there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). When taken in context, as a whole, a reasonable jury could determine that the denial of leave and constructive discharge of Ms. Elder was in retaliation for her earlier complaints. Again, as there exists a genuine issue of material fact, summary judgment must be denied.

### C. Plaintiffs' Claim for Destruction of Public Records

Defendants claim that "RC 149.43 defines public records as any record that is **required** to be kept by any governmental unit". (Defendants' Brief, p. 13.) Defendants rely upon the

decision in *State ex rel MAAD v. Gosser*, a 1984 case, and two other cases from 1970 in support of their position. Defendant's argument, however, is outdated by sixteen years.

It is true that when *Gosser* was decided the Public Records Law defined a "public record" as any record that is "required to be kept" by any governmental unit. However, in July 1985, the General Assembly changed the definition of public record, by eliminating the words "required to be kept" and substituting the words "is kept" (141 Ohio Laws, Part II, 2761, 2774). Defendants reasoning, and the cases used to support its position, has been outdated since the law changed in 1985, and therefore must be rejected.

A simple reading of R.C. 149.43(A)(1) clearly states, "'Public record' means any record that *is kept* by any public office, including, but not limited to, state, county, city, village, township, and school district units…". (Emphasis added.)

In addition, RC 149.011 defines "records" to include:

Any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

It is uncontroverted that Plaintiffs' compensatory time records were "created" by City. These records documented "policies" (the compensatory time policy of the Division), "decisions" (the determination by Defendant Jumbert as to whether the request for time off was granted or denied), "procedures" (the process by which compensatory time was either earned or used), and "operations" (the staffing of the Division). Clearly, the compensatory time records fall squarely within the definition of "records" as defined in RC 149.011.

It must also be noted that Defendants' argument that the records in question are not "public records", as they are not mentioned on the record retention schedule submitted as Defendants Exhibit "M", is contradicted by their own exhibit. Item PP-29 on Exhibit M clearly

states "Employee Records" as those records which were subject to a records retention schedule. Defendants fail to even acknowledge this item, let along make any attempt to explain how records of an employees compensatory time earned and/or used would not be considered "employee records".

Finally, Defendants' claim that the fact that the City did not sanction the existence of the "informal" compensatory time system renders these records outside the public records law is not only wholly irrelevant in light of the statutory definitions of public records, but also lacks any merit. There is no dispute that Defendant Jumbert was employed as the Division Manager when he created this system. Therefore, the "City", through it's management employee, not only "sanctioned" this system, it created and enforced it.

Clearly, Defendants have absolutely no credible basis for claiming that the compensatory time records in question are not "public records" under Ohio law. They have resorted to severely outdated law, and wholly ignored both the substance of their own exhibits which does not conform to their hollow argument and the plain language of the statute defining public records.

Defendants also attempt to discount the severity of the admitted destruction of Plaintiffs' records by claiming that such destruction "amounted to only one violation" of RC 149.351. Defendants rely upon a 1979 Ohio Attorney General Opinion (79-023) to support their reasoning. First, it must be stated that the severity of the violation is in no way relevant to Defendants' liability for the purposes of summary judgment. Summary judgment proceedings are to determine whether there exists a genuine issue of material fact, not the appropriate penalty for an admitted violation. Defendants' admission alone should serve to defeat their motion for summary judgment.

It should also be noted that Attorney General Opinions are advisory in nature, and have no binding authority over the decisions of state or federal courts. Indeed, courts have come to the exact opposite conclusion in interpreting RC 149.351, finding that each record destroyed constitutes a "violation", for which a $1,000.00 forfeiture is required.

In *State ex rel Sensel v. Leone*, (1998) Ohio App. LEXIS 434, the 12th District Court of Appeals Court concluded, "Pursuant to RC 149.351(B)(2), an 'aggrieved' person is entitled to recover a forfeiture of $1,000 for each violation of RC 149.351. Since we have found that Sensel was 'aggrieved' by the improper disposition of four records, we conclude that she is entitled to a mandatory forfeiture of $4,000.00."[5],[6]

Plaintiffs have conservatively estimated that at least five hundred (500) individual records relating to their hours worked were destroyed by Defendants. At least half of those were records of compensatory time earned or used. The destruction of these records has affected Plaintiffs' ability to present their FLSA case, a fact that Defendants have attempted to use to Plaintiffs' detriment.

Defendants have admitted to destroying Plaintiffs' compensatory time records. Their only defense – that the records are not "public records" – belies the plain reading of the statute. Defendants motion for summary judgment as to this claim must be denied.

### D. Plaintiff's Claim for Spoliation of Evidence

In order to sustain a prima facie claim for spoliation of evidence, the following elements must be established: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on

---

[5] The Court also awarded Sensel attorney fees in addition to the forfeiture amount, despite finding that the Defendant acted "reasonably and in good faith" when the records in question were disposed of. Therefore, in the instant case, Defendants excuse that such records were "informal" and no longer in use is not a valid excuse for their admitted violation of RC 149.351.

[6] The Court of Appeals decision was reversed on other grounds by the Supreme Court. The Supreme Court's decision was based on and limited solely to the issue of whether the records in question (unsolicited letters complaining of a basketball coach's actions) were public records, and did not comment on the appellate court's determination as to the definition of "violation" or the awarding of attorney fees.

the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co*. (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037, 1038. Defendants' motion should be denied, as there exists genuine issues of material fact as to each element required for Plaintiffs' spoliation of evidence claim.

During one of the hearings on Ms. Kish's grievances, CSPA President Dale Sroka inquired as to when Ms. Kish would be compensated for her time lost due to the improper accounting of compensatory time. (Sroka Affidavit, Exhibit O.) Mr. Sroka informed City Labor Relations Manager, Jim Masturzo, that Ms. Kish had already contacted the Wage and Hour Division of the Department of Labor regarding her owed back time. Mr. Masturzo responded to Mr. Sroka that he would not pay the back time owed and Ms. Kish could "do what she has to do" to recover such back time. (Sroka Affidavit, Exhibit O.) Mr. Jumbert was present for this conversation. (Sroka Affidavit, Exhibit O.) The City was also on notice, pursuant to a letter from Mr. Sroka dated July 8, 1999, that the CSPA sought a remedy of this situation for all employees, not just Ms. Kish, who filed the actual grievance. (See Exhibit A.)

Mr. Masturzo's statement is tantamount to a challenge, if not an invitation, to file suit against the City. Therefore, reasonable minds could conclude that litigation against the City for the recovery of such funds was probable, and that the City had knowledge that litigation was probable.

The inconsistent words and actions of Ms. Stevens also supports Plaintiffs' claim of spoliation of evidence. When Plaintiffs first sought their records from the Division, Ms. Stevens told them that their records were in the Personnel Department. When Plaintiffs went to the

Personnel department, and were told to go back to the Division, Ms. Stevens then told Plaintiffs that the records had been "destroyed".

During all relevant times, Ms. Stevens was the records retention clerk for the Division. She was trained by the City's Department of Law in the proper process of retaining public documents. (Stevens Tr. p. 44.) Part of her duties included packing away old records, recording what was in each box, and making a list of all records destroyed. (Stevens Tr. p. 42-44.) Ms. Stevens engaged in this task at least once a year, and at least four times during her employment in the Division. (Stevens Tr. p. 43.) Ms. Stevens admits that she did not follow this process with Plaintiffs' records. (Stevens Tr. p. 45.) Ms. Stevens also admits that she received no discipline for her actions. (Stevens Tr. p. 51, 52.)

Plaintiffs contend that Ms. Stevens' testimony is inconsistent, and therefore lacking in credibility. If Ms. Stevens had already destroyed the records at the time of the initial request, there would be no reason to tell Plaintiffs that the records were in the Personnel Department. Further, Ms. Stevens' actions contradict her training and past practice in fulfilling her duties as records retention clerk. Plaintiffs contend that Ms. Stevens destroyed the records only after the original request was made, in a deliberate effort to eliminate Plaintiffs access to such records. Ms. Stevens' credibility presents a question as to when the records in question were destroyed, and the purpose for such destruction.

As to whether the destruction of the compensatory records has disrupted Plaintiffs' case and caused damage, this is the crux of Plaintiffs' complaint. Without the compensatory time records, Plaintiffs have been unable to precisely determine their overtime losses. Indeed, Defendants have made no claim that Plaintiffs have failed to meet these elements of their spoliation of evidence claim.

Clearly, as to Plaintiffs' claim of spoliation of evidence, there exists several genuine issues of material fact, which must be determined by a jury. Therefore, Defendants' motion for summary judgment as to this claim should be denied.

## IV.  <u>CONCLUSION</u>

Plaintiffs have demonstrated that a genuine issue of material fact exists as to each of their claims against all Defendants. Plaintiffs have presented evidence, when viewed in the light most favorable to them, presents a question of fact as to whether they were denied overtime compensation under the Fair Labor Standards Act and retaliated against for their complaints about FLSA violations. Defendants have admitted to destroying the records in question, and their argument that such records are not "public records" is not supported by fact or law. Finally, Plaintiffs have presented evidence showing that such destruction was willful and with knowledge of probable litigation, therefore violating Ohio's spoliation of evidence laws.

For each of the foregoing reasons, Defendants motion for summary judgment should be denied.

Respectfully submitted,

/s/ Jennifer A. Corso
David R. Knowles (0017693)
Anthony N. Palombo (0064384)
Christopher A. Holecek (0040840)
Jennifer A. Corso (0063667)
WEGMAN, HESSLER & VANDERBURG
6055 Rockside Woods Blvd., Suite 200
Cleveland, Ohio  44131
(216) 642-3342  Fax:  (216) 520-0145

drknowles@wegmanlaw.com
anpalombo@wegmanlaw.com
caholecek@wegmanlaw.com
jacorso@wegmanlaw.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Brief in Opposition to Defendants' Summary Judgment Motion was filed electronically on the 22nd day of June, 2001. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jennifer A. Corso
Jennifer A. Corso (0063667)
WEGMAN, HESSLER & VANDERBURG

Attorney for Plaintiff